WOODRUFF COUNTY *v*. ROAD IMPROVEMENT DISTRICT No. 14.

Opinion delivered June 23, 1924.

1. BRIDGES—APPROVAL OF CONTRACT FOR CONSTRUCTION.—Where the county judge by the same contract agreed to contribute to the building of two county bridges, and the county court approved and allowed a claim for building one of the bridges and in the judgment stated that the claim for the other bridge was deferred because not completed, this amounted to an approval of the contract.

2. BRIDGES—AGREEMENT OF COUNTY—EVIDENCE.— Evidence *held* to warrant a finding of a contract between a county judge and a road improvement district for the payment of a named sum toward the construction of two bridges.

3. COUNTIES—VERIFICATION OF CLAIM.—Where a county contracted to pay a named sum for the construction of a bridge within an improvement district, and accepted and used the bridge, it can-

not resist the payment of a claim therefor because the verifying affidavit was not couched in the precise language required by Crawford & Moses' Dig., §§ 2029, 2030.

Appeal from Woodruff Circuit Court, Southern District; *E. D. Robertson,* Judge; affirmed.

*R. M. Hutchins* and *Kirby & Hays,* for appellant.

The alleged contract under which the claim was made was void. It is not even claimed that the procedure was followed which is prescribed by law regulating the construction of bridges of this class, *i. e.,* the appointment of commissioners, the selection and report upon a site for the construction thereof, according to plans agreed upon and approved by the county court. Article 19, § 16, Const. 1874; C. & M. Digest, § 827. The contract was not regularly made, nor was there shown to have been a ratification of it by the county court, the only agency having authority to bind the county to pay for such improvements, and there can be no presumption in favor of its validity. The county court itself was powerless to make a valid contract for the construction of bridges of this class, unless an appropriation had previously been made for bridge construction, which was wholly or in part unexpended. C. & M. Digest, § 1976; 61 Ark. 74; 103 Ark. 468; 54 Ark. 645.

*W. J. Dingan,* for appellee.

In *Woodruff County* v. *Road Improvement District No. 14,* 159 Ark. 374, involving payment for the first bridge constructed under this contract, it was held that in an action to recover for building a bridge, the presumption is that money to build the same has been appropriated, citing 72 Ark. 330 and 103 Ark. 468; and also that the county court could have made a valid contract in the first instance for the construction of the bridge there in question. Under that decision the county court could have made a contract to build the bridge involved here, and for which payment is sought. And, as decided in that case, the court ratified the contract for the building of this bridge. The language employed by the county court in disposing of the Roaring Slough bridge claim by allow-

ing it, and in continuing the matter as to the Bear Slough bridge, because "same not being completed," can bear no other interpretation than a ratification. 72 Ark. 330.

WOOD, J. This action was instituted by Road Improvement District No. 14 of Woodruff County (hereafter called appellee) against Woodruff County to recover the sum of $2,500 alleged to be due the appellee for the cost of construction of a bridge across Bear Slough in Woodruff County and in the territory embraced in the improvement district. The commissioners of the appellee filed what is designated as an "account" in the county court of Woodruff County, in the nature of a complaint, in which they state that, "in pursuance of a contract entered into on the 15th day of April, 1920, between the county judge of Woodruff County and the appellee, through its commissioners (naming them), it was agreed that the commissioners of appellee act for the county and the appellee in the construction of a steel bridge across Bear Slough, on the boundary line between the northern and southern districts of Woodruff County; that it was agreed that Woodruff County would pay $2,500 of the contract price for the construction of the bridge; that the commissioners had constructed the bridge and had paid to the Illinois Steel Bridge Company, the contractors, the contract price for such construction. The following is the verification of this account or complaint: "State of Arkansas, County of Woodruff: Comes E. W. Butler, D. J. Williams and J. F. Summers, and on their several oaths state that they are the commissioners of Road Improvement District No. 14 of Woodruff County, Arkansas, and that the statements in the foregoing account are true and correct; that, under the contract referred to in said statement of account, Woodruff County justly owes Road Improvement District No. 14 the sum of $2,500, and said sum is past due and no part thereof has been paid. (Signed) J. F. Summers, E. W. Butler, D. J. Williams. Subscribed and sworn to before me this 30th day of March, 1922. A. H. Hamilton, notary public. My com. ex. 2/2/26."

An exhibit was attached to the account, the report of the commissioners, in which it is recited that the bridge had been completed by the contractors "according to the plans and specifications heretofore approved by this court * * *." They also exhibited a certified copy of the county court's order, which recited as follows: "On this day is presented to the court the claim of Road Improvement District No. 14 in the sum of $2,500, against Woodruff County for the construction of a bridge, and, upon an examination by the court, said claim is disallowed.    January 1, 1923." They also exhibited the following account:

"Woodruff County, Dr., To Illinois Iron & Steel Bridge Co.

| | |
|---|---|
| To steel bridge Roaring Slough | $2,500.00 |
| To steel bridge Bear Slough | 2,500.00 |
| | $5,000.00 |

"Indorsed: Examined and allowed in the sum of $2,500 for the steel used on Roaring Slough. 12/30/1920. J. W. Simmons.

"The above is to be issued in $100 pieces. Filed December 30, 1920. Walter Jimmerson, Clerk. By N. N. Cain, D. C."

They also exhibited the following:

"On this day is presented the claim of the Illinois Steel Bridge Company for steel for Roaring Slough and Bear Slough bridges, and, upon consideration, the claim for $2,500 for Roaring Slough is allowed and the claim for Bear Slough bridge, *not being completed, is deferred.* J. W. Simmons, county judge."

The above account was filed and disposed of as above on the 30th of December, 1920.

They also exhibited a certificate of the county clerk to the effect that, according to the treasurer's report to the county court of Woodruff County, filed at the January term, 1921, there were no funds in the treasury to the credit of ordinary county funds and no funds to the credit of the road and bridge fund on the 30th of December, 1920.

J. F. Summers testified that he was one of the com-
missioners of the appellee and chairman of its board of
directors; that appellee was a duly organized improve-
ment district; that some time in March or April, just be-
fore the plans of the improvement district were filed, he
called the attention of Judge Simmons, county judge, to
the condition of the bridges over streams known as Roar-
ing Slough and Bear Slough. The effect of his testimony
was that, after talking over the matter with the county
judge as to the character of the bridges appellee wished
to construct over these streams, the county judge was to
pay $2,500 towards the construction of each bridge; that,
with that information in mind, the commissioners had
the plans drawn for the expenditure of that sum above
what they had contemplated, in order to compass the
building of a permanent bridge of proper construction,
as indicated by the county judge. The bridges were to
take the place of the bridges that were on the public
road running across the above-mentioned streams which
had been in use since the roads were laid out, and were
then in a dangerous condition, and had been condemned
by the overseer. The bridges constructed by the appellee
cost $8,500 each, and the county judge agreed to pay
$2,500 on each of the bridges. At the close of the year
1920 the bridge over Roaring Slough had been constructed
but the bridge over Bear Slough was only partially built,
the piers having been put down and the steel work being
all on the ground. The appellee presented a formal
claim to the county court for $5,000 in the name of
Illinois Iron & Steel Bridge Company, with the support-
ing affidavit and report of the engineer of the district
and the testimony of the commissioners. Witness then
identified the record of the county court as above set
forth, and stated that it explained everything in connec-
tion with it. Witness referred to the order of the county
court which recited that "the claim for $2,500 for Roar-
ing Slough bridge is allowed, and the claim for Bear
Slough bridge, not being completed, is deferred," as fol-
lows: "It says Bear Slough not being completed—it

wasn't completed, because only part of it had been constructed, and the steel was on the ground, and the court did not allow the entire five thousand dollars. The claim was recognized, but action was merely deferred until completion of the bridge.''

Witness was asked this question: ''Was there any question raised by the court so as to take proof on the allowance of this particular claim? A. None whatever. We brought in the engineer, and a regular sworn statement of the condition that it was in.'' Witness was then asked, ''Later, after the new county judge came into the office, what further did the commissioners do with regard to having the remainder of the claim allowed, if anything?'' and answered. ''After the bridge had been completed and painted, and everything completed, the commissioners then made out and presented the claim, which is in this record here, to the county court, for allowance for the deferred amount mentioned in this order. This was merely a continuation of that matter. Q. And this is the claim which was disallowed? A. Yes sir.''

It was from the action of the county court in failing to allow the balance of the claim that this appeal is taken. The witness further testified on cross-examination, explaining the agreement, and stated that the plans of the appellee for the bridges were not made and filed until after the talk with the county judge, and that the county judge was to pay the sum of $2,500 on each bridge, and stated that, by getting the substantial bridges at a cost of $2,500 each, it was an economical proposition for the county. The commissioners didn't expend all the money raised in the district by $65,000, and retired bonds in that amount that were not then due. The old bridges were wooden bridges.

The testimony of Summers was corroborated by the testimony of one of the other commissioners. The road overseer in appellee district testified that the new bridges were constructed in 1920. He corroborated the testimony of Summers as to the condition of the old bridges,

and testified that the county judge then in office; Judge Carl-Lee, successor to Judge Simmons, told witness to take what material he could get out of the old bridge and use it in building bridges over other streams, which witness did.

Judge Carl-Lee testified on behalf of the county, denying that he had told the overseer to take the material in the old bridges to use in building other bridges. He stated that the steel bridge constructed over Bear Slough by the Illinois Steel Bridge Company, on which the action in controversy was predicated, had not been accepted by him as county judge, or by the county court since he had been the judge; that the commissioners of the appellee were not his agents for the construction of any bridges, and had no authority to act for the county in any capacity from witness or from the records of his predecessor, as far as witness had been able to find. Witness did not think there was any such record. The county court since January 1, 1921, had not authorized the construction of the bridge over Bear Slough by the commissioners of the appellee. Witness could not say as to 1920. The county court had not ratified in any way any action of the commissioners of the appellee in the construction of the bridge over Bear Slough since January 1, 1921.

Both Woodruff County and the appellee introduced the record of the county court as above set forth, pertaining to the presentation and allowance and disallowance of these claims.

It was shown in rebuttal that the Illinois Steel Bridge Company had been paid in full for the construction of the bridges by the appellee. A witness stated that the county court said that the commissioners of the appellee were sufficient to act as the county's representatives in the construction of the bridges.

Upon the above facts the court overruled the motion to dismiss the action, and found that there was but one contract for the building of the two bridges, and that the county court approved and paid for one bridge

and entered an order of record mentioning the other bridge, and gave as a reason for deferring action on it that the bridge was not completed; that both bridges were under the same contract, and that the action of the county court amounted to an approval of that contract. The court thereupon entered a judgment in favor of the appellee, from which is this appeal.

1. In the case of *Woodruff County* v. *Road Imp. Dist. No. 14,* 159 Ark. 374, this court held that county warrants which had been issued in payment for the construction of Roaring Slough bridge were valid. The facts of that case show that Roaring Slough bridge was built under the same agreement or contract with the county judge as that under which Bear Slough bridge, the bridge involved in this controversy, was constructed. It was all one contract, and what was said in the opinion in that case clearly shows that the appellee is entitled to recover upon the facts disclosed by this record. In that case in the statement of facts we said: "After this bridge (Roaring Slough bridge) had been constructed, the board of commissioners of the road improvement district paid the Illinois Steel Bridge Company the full amount due it for the construction of the bridge. The payment was made out of the funds of the road improvement district. The board of commissioners of the road improvement district then presented a claim to the county court, in the name of the Illinois Steel Bridge Company, for the sum of $2,500, to be applied toward the payment of the construction of the Roaring Slough bridge." Other facts are then stated substantially as in the case at bar. In the opinion in that case we said: "The county court canceled the warrants in question, and refused to reissue them because they had been issued without authority in the first instance. The county court erred in this conclusion. The bridge across Roaring Slough was a county bridge, which it was the duty of the county court to construct in the first instance, and to replace after the old bridge had worn out. * * * This court has held that a county may, like an individual,

ratify an unauthorized contract made in its behalf if it is one the county could have made in the first instance. It follows that, if a county could ratify an unauthorized contract, it could ratify one which it had authorized.''

We concur in the view of the trial court that the action of the county court in approving and allowing the claim for the building of the bridge over Roaring Slough and mentioning in its judgment the claim for the Bear Slough bridge, and reciting that "the claim for Bear Slough bridge, not being completed, is deferred," amounted to an approval of the contract between the county judge of Woodruff County and the appellee for the construction of the Bear Slough bridge. The undisputed facts show that the work of building these separate bridges was under one and the same contract. The language in which the order of the county court was couched was simply tantamount to saying, "The contract for the building of these bridges is approved, and the claim is allowed for the one completed, and the allowance of the claim for the other is deferred until that is also completed."

2. This cause was, by consent, submitted to the trial court sitting as a jury, and the trial court was warranted in finding, from the record and oral testimony in the case, that the contract between the county judge and the appellee for the payment of $5,000 toward the construction of these bridges was entered into in the spring of 1920, and that the bridge over Roaring Slough had been completed by December 30, 1920; that the bridge over Bear Slough was not then completed. But the contract with the county judge was made certainly before December 30, 1920. There is a certificate of the county clerk in the record showing that on December 30, 1920, there were no funds in the treasury to the credit of ordinary county funds or to the credit of road and bridge funds. But this testimony does not show or tend to show that there was no appropriation by the levying court for the building of these bridges prior to the time the contract was entered into between the county and the appel-

lee, nor does it tend to show that there was no money in the county treasury to the credit of the road and bridge fund at the time the contract was made.

In *Woodruff County* v. *Road Improvement District No. 14, supra,* we said: "This court has held that, in an action against a county to recover for building a bridge, the presumption is that money to build the same has been appropriated." Citing *Howard County* v. *Lambright,* 72 Ark. 330, and *Watkins* v. *Stough,* 103 Ark. 468. In *Howard County* v. *Lambright, supra,* we said: "But the evidence does not show whether such appropriation had been made or not, and, in the absence of any proof on that point, we should not presume that the county judge authorized the construction of the bridge, in violation of the statute."

Furthermore, there was testimony from which the trial court might have found that the county judge, as the new bridges were being constructed, authorized the road overseer to use the old material in the building of bridges elsewhere, thus showing that the county judge was accepting the new bridges for the use of the public. "We do not think," says Judge RIDDICK, "that the county can take charge of the bridge, and allow the public to use it as a public bridge, and thus get the benefit of the work and labor of the contractor and still defeat the claim for compensation.  *  *  *  The obligation to do justice rests on all persons, natural and artificial, and, if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation."

3.  It follows from what we have said above that, since there was a contract by the county with the appellee to pay the sum of $2,500 for this bridge, which the county has accepted and is using under the terms of the contract, it is in no attitude to resist the payment of the claim because the verifying affidavit was not couched in the precise language required by §§ 2029 and 2030 of Crawford & Moses' Digest concerning the verification of accounts for the allowance of claims.  This so-called

account was really in the nature of a complaint stating a cause of action bottomed on a contract to pay a specified sum of money, and the verification thereto met the requirements of the law.

We find no reversible error in the record. The judgment is therefore affirmed.